Norbert A. OGDEN, Milton A. Hartman, James K. Husk, M. Jean Kazlauskaus, Theodore J. Reuther, Charles G. Cook, William Reno, Oscar L. Cox, Henry Harrower, David R. Henderson, Shirley A. Hunt, Geraldine Rivard, Fred Schmekel, John Dunstone, Theresa Orjada, Chester Schuster, Kenneth Young, Roman S. Grucz, Andrew Lutenski, Herman Stuedemann, Robert Barnes, George Cappell, Ralph J. Banner, Alena Higgins and Carolyn P. Thiede, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

MICHIGAN BELL TELEPHONE COMPANY, a Michigan corporation and Dan Grady, Defendants.

Civ. A. No. 83CV0482DT.

United States District Court, E.D. Michigan, S.D.

March 31, 1987.

Hill, Lewis, Adams, Goodrich & Tait, W. Merritt Jones, Jr., Robert B. Stevenson, Michael Kubacki, and Bradley A. Carl, Detroit, Mich., Francis M. Fitzgerald, Mt. Clemens, Mich., Theresa Smith Loyd, Detroit, Mich., John F. O'Grady, Saginaw, Mich., for plaintiffs.

Butzel, Long, Gust, Klein, & Van Zile, Robert M. Vercruysse, Barbara M. Kendzierski, Constance M. Ettinger, Detroit, Mich., for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER [1]

PHILIP PRATT, Chief Judge.

Members of the plaintiff class claim they were wrongfully denied retirement benefits

---

**1.** This memorandum opinion and order supersedes that of January 27, 1987, the latter having

in violation of the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* The defendants are the plaintiffs' former employer, Michigan Bell Telephone Company (Michigan Bell), and Dan Grady, Michigan Bell's vice president of personnel. Grady was the plan administrator of an early retirement program known as the Management Income Protection Plan (MIPP). The plaintiffs are several hundred former management employees of Michigan Bell who retired between March 1, 1982 and June 1, 1982 and did not receive MIPP benefits.

Michigan Bell, believing a reduction in force was necessary, adopted MIPP on October 1, 1980 to encourage management employees to take early retirement voluntarily. The plan document reveals MIPP's purpose:

> The Management Income Protection Plan (MIPP) is designed for management employees who are designated as affected by a resizing opportunity and are terminating employment with the Bell System for that reason. MIPP is aimed at easing the transition for these employees by providing separation payments and medical insurance coverage.

Among other benefits, MIPP provides up to one year's salary in addition to pension benefits normally provided. MIPP benefits are available only to those management employees who are designated as surplus by the vice president of personnel. A group of employees so designated may receive MIPP benefits if they retire during the defined period. After this "window" closes, MIPP benefits are unavailable until another group of employees is designated as surplus.

MIPP benefits were first offered between October 1 and December 1 of 1980. After this offering, Grady and other Michigan Bell officers informed remaining employees that the surplus problem had been solved, and that MIPP would not be implemented in the foreseeable future. Employees were told that they should not delay retirement plans in anticipation of being "MIPPed." Plaintiffs allege that representations were made throughout 1981 and 1982 regarding the unavailability of MIPP benefits in the future, both through unsolicited comments from Michigan Bell and in response to questions from employees. Claiming to have acted in reliance on these representations, the plaintiffs retired between March 1 and June 1 of 1982 without the added benefits offered by MIPP. On June 17, 1982 Michigan Bell announced that MIPP benefits would be available to employees who retired between June 1 and July 31, 1982. Having retired prior to June 1, the plaintiffs did not qualify for this MIPP offering.

Count One of the plaintiffs' third amended complaint alleges that the defendants breached their fiduciary duties as set forth in ERISA by misrepresenting the future availability of MIPP benefits and thereby not acting in the best interests of the plan participants. Count Two alleges that the representations regarding the unavailability of future MIPP offerings acted to amend MIPP so that employees who relied upon those comments and retired early qualify for MIPP benefits. These claims are for benefits under the plan itself. Several other claims, including some arising under state law, have previously been dismissed by this court. *See Ogden v. Michigan Bell Tel. Co.,* 595 F.Supp. 961 (E.D. Mich.1984) and 571 F.Supp. 520 (E.D.Mich. 1983). Before the court are cross motions for summary judgment.

### I. *Standing*

The threshold question in every federal case is whether the plaintiffs have standing. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). Standing does not depend on the merits of the case, and the court must accept as true all material allegations of the complaint and construe them in favor of the plaintiffs. *Warth,* 422 U.S. at 500–501, 95 S.Ct. at 2206. Count One alleges breaches of fiduciary duties set forth in 29 U.S.C. § 1104. Count Two is a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). These plaintiffs have

been amended for the reasons stated in a separate opinion filed on this date.

standing only if they are participants in Michigan Bell's MIPP plan.

■ A participant is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). There is no doubt that the plaintiffs have standing to bring their claim for benefits in Count Two. If the plaintiffs are successful in their claim that the representations made between 1980 and 1982 amended the plan to include them, they would become eligible to receive benefits from MIPP.[2]

■ Count One seeks the recovery of plan benefits on the grounds that the plaintiffs would not have retired before June 1, 1982 but for the defendants' misrepresentations concerning the availability of MIPP. Standing appears clear in this case as well, for if the plaintiffs are successful, they would recover a plan benefit. However, some courts have held that former employees seeking benefits made available for the first time after their retirement have no standing under ERISA. *Stanton v. Gulf Oil Corp.*, 792 F.2d 432 (4th Cir.1986); *Joseph v. New Orleans Elec. Pension*, 754 F.2d 628 (5th Cir.1985), *reh. denied*, 761 F.2d 695, *cert. denied* — U.S. —, 106 S.Ct. 526, 88 L.Ed.2d 458. These cases are not relevant here, as MIPP existed as a plan in 1980, well before the plaintiffs retired in 1982.[3]

The Ninth Circuit has held that former employees who have received their vested benefits in a lump sum do not have standing to sue for breach of fiduciary duty.

*Kuntz v. Reese*, 785 F.2d 1410 (9th Cir. 1986), *cert. denied*, — U.S. —, 107 S.Ct. 318, 93 L.Ed.2d 291. The *Kuntz* court reasoned that if successful, the claim would result in damages, not in an increase of vested benefits payable by the plan, and therefore the plaintiffs could not "become eligible" for benefits. This reasoning is not readily applicable to this case, where the damages sought are the benefits allegedly lost, dissolving any meaningful distinction between the two.

To apply *Kuntz* here would also eviscerate some of the enforcement tools provided by ERISA. 29 U.S.C. § 1109 holds a fiduciary personally liable for any losses to a plan arising out of a breach of fiduciary duty. The damages sought in such cases inure in large measure to the plan itself, not just to the plaintiffs. The Supreme Court recently said:

A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1985). The Court cited extensive legislative history emphasizing that a critical area of Congressional concern when ERISA was drafted was the elimination of plan mismanagement. *Id.*, 105 S.Ct. at 3090 n. 8. To interpret the standing requirements of ERISA narrowly would frustrate this goal, for a fiduciary could insulate itself from charges of mismanagement from former employees by "buying them off" with lump sum payments upon retire-

---

**2.** One court has held that only former employees with colorable claims to vested benefits are participants. *Saladino v. I.L.G.W.U. Nat. Retirement Fund*, 754 F.2d 473 (2d Cir.1985). This holding ignores the plain language of the statute, which speaks of former employees who may become eligible for a benefit of *any type*.

**3.** Defendants argue elsewhere that MIPP was not really a plan until June 17, 1982 when the second company-wide MIPP offering was made. A plan which offers early retirement or severance payments is an employee benefit plan covered by ERISA. *McBarron v. S & T Industries,*

*Inc.*, 771 F.2d 94 (6th Cir.1985); 29 U.S.C. § 1002(1); 29 C.F.R. § 2510.3–1(a)(3). A plan must be established pursuant to a written instrument, 29 U.S.C. § 1102, and its existence may be inferred if a reasonable person can ascertain the benefits, intended beneficiaries, source of financing and the procedures for receiving benefits. *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982). Here, MIPP was established by written instrument in 1980 which itself described MIPP as a plan covered by ERISA, and contains all the elements set forth in *Dillingham*.

ment. For these reasons, the court finds that the plaintiffs have standing to bring this action.[4]

## II. Count One: Violation of Fiduciary Duty

 Section 1104(a) of ERISA establishes a "reasonable person" standard of care for fiduciaries:

(a) Prudent man standard of care.

(1) Subject to section 1103(c) and (d), 1342 and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive benefit of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) With the care, skill prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

29 U.S.C. § 1104(a). Section 1104 "imposes an unwavering duty to make decisions with single-minded devotion to a plan's participants...." *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir.1984). Representations made in a fiduciary capacity must not have the effect of misleading or misinforming plan participants, nor can necessary information be withheld. *Genter v. Acme Scale and Supply Co.*, 776 F.2d 1180, 1185 (3rd Cir.1985); *Morse v. Stanley*, 732 F.2d 1139, 1147 (2d Cir.1984); *Peoria Union Stock Yards Co. v. Penn Mut. Life Ins.*, 698 F.2d 320, 326 (7th Cir.1983).

 Before the court can determine whether a fiduciary violated his duties, the court must determine if he was acting as a fiduciary when he engaged in the disputed conduct. Dan Grady is the named fiduci-

ary of MIPP, as well as being vice president of personnel for Michigan Bell. ERISA permits an officer or employee of a corporation to also serve as the fiduciary of a plan sponsored by that corporation. 29 U.S.C. § 1108(c)(3); *See Anno.* 64 A.L.R. Fed. 602. Fiduciaries have a duty "to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty demanded of them as trustees of a pension plan." *Amato v. Western Union Intern., Inc.*, 773 F.2d 1402, 1417 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1167, 89 L.Ed.2d 288. This may require the fiduciary to step aside in favor of a neutral referee, or at least to conduct an inquiry into the potential for a conflict of interest. *McMahon v. McDowell*, 794 F.2d 100, (3rd Cir.1986), *cert. denied* —— U.S. ——, 107 S.Ct. 473, 93 L.Ed.2d 417. However, not every corporate decision arguably affecting a plan must be made solely in the interests of plan participants. *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir.1982), *cert. denied* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631. *Sutton v. Weirton Steel Div. of Nat. Steel Corp.*, 567 F.Supp. 1184, 1200 (N.D.W.Va. 1983) *aff'd.*, 724 F.2d 406 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345. When an employer acts as a plan fiduciary, it wears "two hats," and assumes fiduciary status only when it functions as a fiduciary and not when it is conducting business not regulated by ERISA. *Amato*, 773 F.2d at 1426–17. The Department of Labor has taken the position that "settlor functions" relating to the formation, design and termination of plans are not fiduciary activities. 13 BNA Pension Reporter 472 (1986).

The plaintiffs assert that when Grady stated in 1980 that MIPP would not be used in the foreseeable future, he was acting in his fiduciary capacity.[5] The decision

---

**4.** This conclusion differs from that of other courts in cases involving MIPP, holding that plaintiffs who retired after a MIPP offering did not have standing unless they actually had been declared eligible for that offering. *Walker v. The Mountain States Telephone and Telegraph Co.*, 645 F.Supp. 93 (D.Colo.1986); *Loechl v.*

*Illinois Bell Telephone Co.*, 648 F.Supp. 1178 (N.D.Ill.1986).

**5.** Plaintiffs focus on the fact that the defendants' initial comments on the future of MIPP were unsolicited. The court finds this an insignificant issue, as the evidence is clear that in the

to offer MIPP benefits is construed by the plaintiffs as an eligibility decision, which is a typical fiduciary duty. 29 U.S.C. § 1002(21)(A); *Anno.* 67 A.L.R.Fed. 186. It is further argued that Grady's corporate duty as personnel officer to encourage early retirement without MIPP benefits so as to minimize employee costs conflicted with his fiduciary duty of total loyalty to participants in the MIPP plan. Claiming that this was tantamount to a *per se* violation of Section 1104, plaintiffs assert that Grady should never have accepted the position as fiduciary for MIPP and that a neutral individual should have been chosen.

The first issue which must be determined in the analysis of this claim is the nature of the June, 1982 decision by the defendants to open the MIPP window. If that decision is characterized as a fiduciary one, then representations regarding it are necessarily within the defendants' fiduciary capacity. On the other hand, if the decision in 1982 was a business one, the duty of loyalty found in ERISA would not attach to the representations made by the defendants between 1980 and 1982. The issue is complex. The decision to offer MIPP in 1982 was neither the formation of a new plan nor the adoption of a plan amendment, both considered to be non-fiduciary activities. The plan had been in existence since 1980, and the 1982 decision was undertaken pursuant to the plan, with no amendment being necessary. Thus at first glance, the decision to implement MIPP was merely an eligibility decision by the fiduciary, i.e., a declaration of who was "surplus," and therefore qualified to receive MIPP benefits. As is often the case, first impressions are deceiving.

This case is set in the severe recession of the early 1980's. Michigan Bell was on the brink of serious financial problems

throughout the period at issue.[6] Providing services in a heavily regulated industry, Michigan Bell could not respond to economic pressures with the flexibility of companies in the purely private sector. For instance, it could not readily raise the price of its services to compensate for declining revenues. Reduction of costs was the only response immediately available to management. This is reflected in memoranda issued by top management of Michigan Bell in early 1981 setting forth in great detail cost-saving measures, including the elimination of rental plants, personalized stationery and the executive dining room. These types of measures obviously could have only a limited impact, and more drastic measures came under consideration. The inevitability of reducing the size of the workforce became apparent to all levels of management.

The issue of management employee surplus was discussed at every executive group meeting between the two MIPP offerings. The board of directors discussed methods of reducing the work-force, including management layoffs. This last option was rejected, in keeping with a long tradition of not laying off management employees. MIPP was also discussed at many of those meetings. The defendants initially rejected the use of MIPP and instead adopted less drastic measures to encourage early retirement. For instance, on November 20, 1981 Michigan Bell announced a change in pension computations effective February 1, 1982 which provided an increase in benefits. Also announced at that time were pre-retirement estate and tax planning services and job placement assistance for those who retired before the end of April, 1982. Grady said at that time that these changes "coincide in a supportive and timely way with present downsizing efforts."[7]

---

difficult economic times of the early 1980's, everyone at Michigan Bell was concerned about jobs. This is reflected in the constant questioning by Michigan Bell employees concerning MIPP, which surely would have taken place even without the initial statements by Grady.

**6.** The financial difficulties faced by Michigan Bell in the early 1980's, including the problem of surplus employees, is not a disputed issue.

**7.** "Negative incentives" were also implemented. In 1981 some surplus managers were placed in security guard jobs. In early 1982 each department was asked to identify the bottom 3% of their managers and recommend specific methods to terminate them.

MIPP is viewed by Michigan Bell as a "force reduction tool" of last resort, to be implemented when normal attrition will not adequately deal with a workforce surplus. A review of the minutes of various meetings, as well as the depositions of Michigan Bell officials reveals that there was disagreement as to the conditions under which a MIPP offering would be appropriate, with middle level management groups vocally supporting such an offering well before top management concurred. The decision to implement MIPP involved, among other things, an analysis of current and predicted revenues which in turn allowed an estimate of what the management surplus was, a determination of how much of that surplus could be eliminated with methods short of either a layoff or MIPP, and a comparison of the costs of maintaining the management surplus with the cost of offering MIPP benefits, which would allow Michigan Bell to set a surplus figure above which a MIPP offering would be cost-effective.

■■■■ The court finds that the decision by Michigan Bell to open the MIPP "window" in June, 1982 was a business decision not undertaken in a fiduciary capacity.[8] Not being able to characterize the decision in a traditional manner, i.e., plan formation, amendment or benefit determination, the court adopts the following test: if a neutral third party, e.g. a bank, had been the plan fiduciary of MIPP, could it have made the decision to offer MIPP benefits? The answer is clearly no. It would have constituted an unacceptable interference with Michigan Bell's business affairs for an outside fiduciary to order the corporation to offer MIPP benefits. It is not the function of a fiduciary to make revenue projections, determinations as to levels of employee surplus, and to inform management which of the multitude of cost and force reduction methods available will be used to solve the problem.

■■■■ The representations made by Michigan Bell employees to the plaintiffs in the eighteen months preceding the June, 1982 MIPP offering also were not made in a fiduciary capacity. It would be illogical to hold that even though the ultimate decision to offer MIPP was a business decision, that representations about that eventuality were made in a fiduciary capacity. A corporate officer is acting as a fiduciary only when performing fiduciary functions. When an inquiry is made concerning business matters, the answer comes from a businessperson, not a fiduciary. Though an individual may have "two hats," only one can be worn at a time. To hold otherwise would be to vitiate Congress' express command that an individual can be both corporate officer and plan fiduciary. Thus when Grady made representations concerning the likelihood of future MIPP offerings, he was speaking in his corporate, not fiduciary capacity, as the decision to offer MIPP was a corporate, not fiduciary function. Accordingly, the fiduciary standards of Section 1104 did not govern his actions.

■■■■ The plaintiffs also claim that the defendants violated ERISA's reporting requirements by failing to disclose the conditions under which a MIPP offering would be made. 29 U.S.C. § 1022(b). Having found that the decision to implement MIPP was a business decision, the court must conclude that employees had no right under ERISA to be informed of the conditions which activated MIPP. The plaintiffs accept the validity of "window" plans with discretionary eligibility standards, but argue that in this case Michigan Bell secretly maintained objective eligibility standards. However, the plaintiffs identify these as "certain financial and management-surplus standards,"[9] which are clearly matters within the sphere of corporate control and

---

8. The plaintiffs do not disagree with this conclusion. They state that Michigan Bell's decision to offer MIPP benefits "was a business decision, and was made for sound business reasons." Plaintiffs' Reply Brief to Defendants' Response to Plaintiffs' Motion for Summary Judgment, p. 15.

9. Plaintiffs' Brief in Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment, p. 15.

not subject to ERISA's disclosure require-ments.[10] ERISA cannot be interpreted to put corporations with early retirement incentive programs into a straightjacket by requiring publication of the precise conditions under which such incentives will be offered. Even if those standards were published, they would be of value only if Michigan Bell also communicated to employees with the frequency and detail necessary to allow an informed decision as to whether a MIPP offering would be likely. ERISA does not mandate that Michigan Bell "open its books" to its employees.

### III. *Plan Amendments*

 The plaintiffs' final claim is that the defendants' representations that a company-wide MIPP was unlikely served to amend MIPP to make eligible the employees who retired before June 1, 1982 in reliance upon those representations. This court earlier held that "[t]here *may be* circumstances in which employer representations and employee expectations define the terms of a benefit plan beyond the language in the document creating the plan." *Ogden v. Michigan Bell Telephone Company,* 595 F.Supp. 961, 970 (E.D.Mich. 1984) [emphasis in the original]. The plaintiffs contend that the defendants' representations "created the reasonable expectation that the plaintiffs would not be excluded from MIPP benefits if such benefits were offered." [11] The plaintiffs have not presented a single instance of the defendants promising that if a MIPP was subsequently adopted, the plaintiffs would receive MIPP benefits. Nor have the plaintiffs cited any deposition testimony indicating that they themselves believed if MIPP was offered sometime after they retired they would receive its benefits. There are no facts which would make this a case involving a promise of eligibility for benefits under the terms of an existing plan. *Vastoler v. American Can Co.,* 700 F.2d

916 (3d Cir.1983); *Landro v. Glendenning,* 625 F.2d 1344 (8th Cir.1980), nor is there ambiguity in the plan documents or a conflict between the plan documents and the employer's normal practice. *Genter v. Acme Scale & Supply Company,* 776 F.2d 1180 (3d Cir.1985); *Zittrouer v. Uarco, Inc. Group Benefit Plan,* 582 F.Supp. 1471 (N.D.Ga.1984). The plaintiffs are not seeking to have the terms of the plan amended, but rather are requesting that the effective date of the MIPP offering be moved back to March 1, 1982. Once again, the plaintiffs are attempting to extend the scope of ERISA to include business decisions.

In sum, the court finds that the defendants' decision to implement MIPP in 1982 was a business decision not governed by the fiduciary standard of ERISA, nor is there any evidence that Michigan Bell amended MIPP to include the plaintiffs. The defendants' motion for summary judgment is granted, and the entire action is dismissed with prejudice.

IT IS SO ORDERED.

---

**10.** Michigan Bell did not establish MIPP secretly, keeping potentially qualified employees ignorant of its existence. *See Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984) *amended,* 6 E.B.C. 1264, *cert. denied,* —— U.S. ——, 106 S.Ct. 183, 88 L.Ed.2d 152. The plaintiffs were aware

of MIPP and of the fact that its benefits would only be available to employees who were designated as surplus by Grady.

**11.** Plaintiffs' Brief Opposing Defendants' Motion for Summary Judgment, p. 34.