[No. A042338. First Dist., Div. Four. Feb. 3, 1989.]

LAWRENCE T. BUTLER, Plaintiff and Appellant, v.
BANK OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Jeffrey Lewis, Alfred H. Sigman, Sigman & Lewis, John A. McGuinn, McGuinn, Hillsman & Palefsky and Curtis L. Kennedy for Plaintiff and Appellant.

Patricia S. Radez, Lawrence Hecimovich and Schachter, Kristoff, Ross, Sprague & Curiale for Defendants and Respondents.

## OPINION

**PERLEY, J.**—Lawrence T. Butler (appellant) appeals the judgment of the superior court entered in favor of respondent The Bank of California (Bank), contending that the court erred in sustaining the Bank's demurrer to his complaint without leave to amend. For the reasons set forth below, we reverse the judgment.

## FACTS

■ ■ ■ ■ The complaint contains the following material facts.[1] In April 1976, Butler was hired as a senior vice-president for the Bank. Eight years later in December 1984, the Bank notified him that his employment would be terminated. Thereafter, appellant and the Bank entered into negotiations regarding severance and other benefits. Appellant was offered two options. Under option I, he could continue as an employee for six months with a lump sum severance payment equivalent to six months salary upon termination. Under option II, he could remain an employee for an additional year. Appellant inquired and was assured that there would be no material effect on his pension benefits under either option. Based on this representation, appellant chose option I and entered into a settlement agreement and general release on those terms.

Appellant retired from the Bank on July 15, 1985. On August 1, 1985, the Bank instituted a new pension plan. Had appellant selected option II and remained an employee of the Bank through at least August 1, 1985, he would have been afforded materially greater pension benefits under the new pension plan. Under the new plan, appellant would have received $2504.16 per month rather than $1368.77 if he retired at age 65 and $1752.91 per month rather than $958.14 if he retired at age 55.

Appellant alleged that the Bank knowingly misrepresented that the choice of either option would have no material effect on his pension benefits and that it knew that appellant's benefits would be greater under the second option due to the institution of the new pension plan. He also averred that the Bank made these representations with the intent to defraud and deceive appellant for the purpose of inducing appellant to choose option I.

Appellant further alleged that the Bank negligently misrepresented the facts concerning his options in that the Bank did not have accurate information about the institution of the new pension plan. Alternatively, appellant charged that the Bank suppressed the fact that it would be instituting the new pension plan.

The Bank demurred to the complaint, contending that the court lacked jurisdiction because appellant's causes of action were preempted by

---

[1] Because this appeal arises after the sustaining of a demurrer without leave to amend, we "assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn therefrom." (*Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 3 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083].)

ERISA.[2] On March 15, 1988, the court sustained the demurrer to the complaint without leave to amend.

## DISCUSSION

■■■ Appellant contends that this action is not preempted by ERISA because he was never a participant in the new pension plan. To bring an action under ERISA, one must be a participant or a beneficiary of an employee benefit plan. (§ 1132(a)(1)(B).) A participant is defined as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan." (§ 1002(7).)

The Bank argues that *Lembo* v. *Texaco, Inc.* (1987) 194 Cal.App.3d 531 [239 Cal.Rptr. 596] is controlling on the issue of ERISA preemption in the present case because appellant's allegations are substantially identical to those in *Lembo*. We are not persuaded.

In *Lembo, supra,* the plaintiffs requested to participate in the company's voluntary separation plan prior to their retirement but were informed that the plan would not be available that year or the following year. Relying on these representations, the plaintiffs retired. Shortly after their retirement, the plan was offered to employees. The court held that the plaintiffs' causes of action for fraud, misrepresentation, and infliction of emotional distress were preempted by ERISA. (*Lembo* v. *Texaco, Inc., supra,* 194 Cal.App.3d at p. 537.) The court determined that the plaintiffs were participants in the plan because the plan existed at the time of their retirement and the plaintiffs had never waived their right to participate in the plan. (*Id.* at pp. 538-539.) The court concluded that they had a colorable claim to vested benefits even though they had not formally enrolled in the plan. (*Id.* at p. 539.)

By contrast, the pension plan at issue here did not exist at the time of appellant's retirement. We find this fact to be a critical distinction between the two cases.

In finding that plaintiffs were participants within the meaning of ERISA, the *Lembo* court distinguished *Kuntz* v. *Reese* (9th Cir. 1986) 785 F.2d 1410, cert. den., 479 U.S. 916 [93 L.Ed.2d 291, 107 S.Ct. 318] and *Freeman* v. *Jacques Orthopaedic & Joint Implant Surg.* (9th Cir. 1983) 721 F.2d 654.

In *Kuntz, supra,* the Ninth Circuit held that former employees could not sue a fiduciary after they had received their vested benefits under a plan.

---

[2] Employee Retirement Income Security Act of 1974, 29 United States Code, section 1001 et seq. All statutory references are to title 29 of the United States Code unless otherwise indicated.

The court determined that damages for breach of fiduciary duty are not "a benefit of any type from an employee benefit plan," within the meaning of § 1002(7) of ERISA. "Former employees who have neither reasonable expectation of returning to covered employment nor a colorable claim to vested benefits simply do not fit within the 'may become eligible' language of § 1002(7)." (*Kuntz* v. *Reese, supra,* 785 F.2d at p. 1411.) The court therefore held that former employees who were not eligible for any type of benefit under the plan and hoped to obtain only damages from a lawsuit were not "participants" who have standing to sue under ERISA § 1132(a).

 *Kuntz* supports a finding that appellant is not a participant within the meaning of ERISA.[3] Appellant is not and may not become eligible to receive a benefit of any type from the new plan. He has no reasonable expectation of returning to work for the Bank and has no claim to vested benefits under the plan. In addition, like the plaintiff in *Kuntz,* appellant does not seek payment of benefits under the plan, but damages for being foreclosed from participating in it.

"[Although] the purpose and policy of ERISA is to remedy hardships caused by inequitable treatment of workers by plan administrators, (citation) . . . the agency charged with administering ERISA would not consider [appellant] to be [a] plan [participant] entitled to this solicitude." (*Kuntz* v. *Reese, supra,* 785 F.2d at p. 1411-1412.) To hold that appellant has standing to sue under ERISA would be tantamount to "converting claims of all types, whether colorable or not, into 'potential benefits' within the meaning of ERISA." (*Id.* at p. 1412.) Appellant was never a plan participant, is not eligible for benefits of any type under the plan and therefore has no ERISA standing.[4]

In *Freeman* v. *Jacques Orthopaedic & Joint Implant Surg., supra,* the court similarly held that a former employee, who claimed that he had been defrauded into not participating in a pension plan, was not a participant and

---

[3] Although this court is not bound by lower federal court decisions even on federal questions, we may find them persuasive and entitled to great weight. (*Debtor Reorganizers, Inc.* v. *State Bd. of Equalization* (1976) 58 Cal.App.3d 691, 696 [130 Cal.Rptr. 64].)

[4] Respondent cites a recent Ninth Circuit decision as limiting the application of *Kuntz.* (*Amalgamated Clothing & Textile Workers* v. *Murdock* (9th Cir. 1988) 861 F.2d 1406.) *Murdock,* however, did not limit *Kuntz* and is distinguishable from the case before us. The *Murdock* court held that plan participants who had received their vested benefits under an ERISA plan had standing to sue where they alleged that the plan fiduciary had breached his duty by obtaining ill-gotten profits and terminating the plan. For the limited purpose of granting the plan participants standing, the court construed the ill-gotten profits as equitably vested benefits under an ERISA plan, thus concluding that the plaintiffs " 'may become eligible to receive a *benefit of any type* from an employee benefit plan.' " (Citation.) (*Id.* at p. 1418.) In the present case, appellant was never a participant in the plan and has no colorable claim for benefits under the plan.

had no standing to sue under ERISA. (*Freeman, supra,* 721 F.2d at pp. 655-656.) The court noted that the defendant made no contributions to the plan on the employee's behalf and that the employee was not eligible for a benefit under the plan since he was no longer employed by the defendant. As in *Kuntz, supra,* 785 F.2d 1410, the court recognized that if the employee could succeed on his claim, he would not receive a benefit under the plan but rather damages. (*Freeman* at pp. 655-656.) "At most, this court, . . . could award Freeman the damages caused by the alleged fraud. This is different from awarding him a 'benefit under a plan.' If it were not, then any plaintiff who could argue a colorable claim would be a participant, since a victorious law suit [sic] would award [him] a 'benefit.' We do not feel Congress intended to open the door to this kind of plaintiff when ERISA's jurisdictional provisions were drafted." (*Id.* at p. 656.)

Here, too, nothing appellant can do will make him eligible for a benefit under the plan. Appellant did not participate in the plan. As in *Freeman, supra,* "[t]his court cannot rewrite history and declare that he did participate." (*Freeman* v. *Jacques Orthopaedic & Joint Implant Surg., supra,* 721 F.2d at p. 656.)

The Bank contends, nonetheless, that appellant's action is preempted under section 1104,[5] relying on *Ogden* v. *Michigan Bell Telephone Co.* (E.D. Mich. 1987) 657 F.Supp. 328, reversed on other grounds, *Berlin* v. *Michigan Bell Telephone Co.* (6th Cir. 1988) 858 F.2d 1154.) In *Ogden, supra,* 657 F.Supp. 328, the court held that retired employees who claimed that the defendants misrepresented the future availability of an early retirement program had standing to sue under ERISA. (*Id.* at p. 332.) The *Ogden* court declined to follow *Kuntz,* reasoning that the employees, if successful, would receive the benefits allegedly lost. (*Ibid.*) The court also opined that interpreting the standing requirements of ERISA narrowly would frustrate ERISA's goal of eliminating plan mismanagement. (*Ibid.*) We reject this view and conclude that *Kuntz* appropriately applies here.

*Ogden, supra,* is nevertheless distinguishable from the case here in that the plan at issue in *Ogden* existed before the employees retired. The *Ogden* court recognized this distinction. It found the holdings of other courts (*Stanton* v. *Gulf Oil Corp.* (4th Cir. 1986) 792 F.2d 432; and *Joseph* v. *New Orleans Elec. Pension* (5th Cir. 1985) 754 F.2d 628, cert. den., 474 U.S. 1006 [88 L.Ed.2d 458, 106 S.Ct. 526]), which held that former employees who sought benefits from a new plan instituted after their retirement had no standing under ERISA, irrelevant. (*Ogden* v. *Michigan Bell Telephone Co., supra,* 657 F.Supp. at p. 332.) We find these cases persuasive.

---

[5] Section 1104 sets forth the duties of a plan fiduciary.

The *Stanton* court found no ERISA standing on facts similar to those here. In *Stanton,* the employee, prior to retiring, inquired whether any changes in the pension plan were contemplated. He retired after being assured that there would be no changes in the pension plan. Shortly following his retirement, the company instituted a new early retirement plan. The court held that the employee was not a participant in the new plan and had no standing to sue under ERISA. The Fifth Circuit similarly found that retirees who had accepted lump-sum retirement benefits were not participants under an amended plan instituted after their retirement. (*Joseph* v. *New Orleans Elec. Pension, supra,* 754 F.2d at p. 630.)

The Bank alternatively argues that appellant's claims are preempted under section 1140,[6] citing *Saporito* v. *Combustion Engineering, Inc.* (3rd Cir. 1988) 843 F.2d 666. In *Saporito,* the court held that employees, who claimed that they were induced to retire under one retirement plan while the company concealed from them but disclosed to certain other employees the development of a more generous retirement plan, had standing to sue under section 1140 for discrimination. (*Id.* at p. 672.) The Bank's reliance on *Saporito* is misplaced. As appellant correctly points out, his claims of misrepresentation and suppression of fact are not actionable under section 1140. (*UAW* v. *Park-Ohio Industries, Inc.* (N.D.Ohio 1987) 661 F.Supp. 1281, 1304.)

Finally, the Bank argues that appellant's action is preempted by ERISA because appellant's participation in the Bank's prior pension plan is deemed participation in the replacement plan for standing purposes. The Bank relies on the court's statement in *Bass* v. *Retirement Plan of Conoco, Inc.* (W.D. La. 1988) 676 F.Supp. 735 ,741 that "[t]he practice of the courts has been to disregard the distinction between participation in the predecessor and successor plans for standing purposes." The *Bass* case and the cases upon which it relied for that statement involved situations where the employee had been a participant in the defendant's plan but became a participant in a "spin-off" plan as a result of a sale of an ongoing business or division. (See, e.g., *Bigger* v. *American Commercial Lines, Inc.* (W.D.Mo. 1986) 652 F.Supp. 123, 125-126.) The courts held that the employees had standing to challenge breaches of fiduciary duty which occurred while they were participants in the prior plan even though they were now participants in the new plan. (*Id.* at pp. 125-126; *Bass* v. *Retirement Plan of Conoco, Inc., supra,* 676 F.Supp. at p. 741 and cases cited therein.) This line of cases is inapplicable

---

[6] Section 1140 provides in pertinent part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."

here. Appellant's complaint is that he was foreclosed from participating in the successor plan. He does not challenge any breach of duty under the prior plan.

## DISPOSITION

The judgment is reversed.

Anderson, P. J., and Poché, J., concurred.