**John P. BIGGER, et al., Plaintiffs,**

v.

**AMERICAN COMMERCIAL LINES, INC., et al., Defendants.**

No. 83–1310–CV–W–8.

United States District Court, W.D. Missouri, W.D.

Aug. 28, 1986.

Kent E. Whittaker, Terrence Ahern, Hillix, Brewer, Hoffhaus & Whittaker, Kansas City, Mo., for plaintiffs.

Robert M. Kroenert, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., Hal N. Bogard, Brown, Todd & Heyburn, Louisville, Ky., for American Commercial Lines, Inc.

Dennis D. Palmer, Shughart, Thomson & Kilroy, Kansas City, Mo., for Meidinger, Inc.

J. Scott Merritt, Jr., Stinson, Mag & Fizzell, Kansas City, Mo., Gary D. Garrison, Ivan J. Schell, Ewen, MacKenzie & Peden, P.S.C., Louisville, Ky., for First Kentucky Trust Co.

David W. Shinn, Shook, Hardy & Bacon, Kansas City, Mo., Peter J. Nickles, John H. Schafer, Covington & Burling, Washington, D.C., for Texas Gas Transmission Corp.

Edward A. Scallet, Thompson & Mitchell, St. Louis, Mo., for American Commercial Lines, Inc. Pension Plan.

STEVENS, District Judge.

## ORDER

Plaintiffs allege causes of action against defendants pursuant to the Employee Retirement Income Security Act (ERISA) and the Racketeer Influenced and Corrupt Organizations Act (RICO). Before the court are the following motions: the joint motions of all defendants for summary judgment on all counts; the supplemental motions of defendants Meidinger, Inc. and First Kentucky Trust Company for summary judgment; plaintiffs' motions for partial summary judgment on Counts One and Four; and defendants' joint motion to strike plaintiffs' requests for a jury trial and punitive damages on their ERISA claims.

Before January 1, 1981, American Carriers, Inc. and its subsidiaries were participants in the American Commercial Lines, Inc. Pension Plan (ACL Plan). Defendant American Commercial Lines, Inc. was the parent corporation of American Carriers, and defendant Texas Gas Transmission Corporation was the parent corporation of American Commercial Lines. The employees of American Carriers and American Commercial Lines were beneficiaries of the ACL Plan. Texas Gas decided in 1980 that American Carriers' employees should be covered by a separate pension plan, and in December, 1980 the board of directors of American Carriers voted to withdraw from the ACL Plan and establish the American

Carriers Pension Plan (ACI Plan). The members of the plaintiff class generally are participants in the ACI Plan who also accrued benefits under the ACL Plan.

When the ACI Plan was "spun off" from the ACL Plan, assets had to be transferred from the ACL Plan to the ACI Plan for benefits accrued by the plaintiffs. Texas Gas wanted to allocate and transfer a minimum of assets to the ACI Plan and retain as much as possible in the ACL Plan, *i.e.,* only transfer enough assets to cover the present value of the ACI plan members' accrued benefits under the ACL plan. Texas Gas asked defendant First Kentucky Trust Company to determine the fair market value of the trust assets and asked defendant Meidinger, Inc. to calculate the portion of those assets to be transferred to the ACI Plan. The fair market value of the assets of the ACL Plan substantially exceeded what Meidinger calculated to be the present value of all benefits accrued under the Plan, but the so-called "excess assets" were all kept in the ACL Plan and none were transferred to the new ACI Plan.[1]

Plaintiffs argue that ERISA's fiduciary standards applied to defendants' decision to keep the excess assets in the ACL Plan, and they assert that defendants' decision was a breach of fiduciary duty. Counts One through Four of plaintiffs' second amended complaint allege breaches of fiduciary duty by defendants in violation of ERISA, and Count Five pleads a RICO claim against defendants. Defendants deny that their actions breached fiduciary duties or that such duties existed, and they seek summary judgment on this and other grounds.

The standards this court must apply in ruling a motion for summary judgment are well settled. The motion should be granted only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Hartford Accident & Indemnity Co. v. Stauffer*

*Chemical Co.,* 741 F.2d 1142, 1144 (8th Cir.1984). The record must be viewed in the light most favorable to the nonmoving party. *Id.* A party opposing a summary judgment motion, however, "may not rest upon the mere allegations ... of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Defendants first seek summary judgment on Counts One, Two, and Three on the ground that the plaintiff class does not have standing to maintain these causes of action. Plaintiffs rely upon Section 502(a) of ERISA, 29 U.S.C. § 1132(a), as their authority to maintain this action. Section 502(a) authorizes civil suits by, *inter alia,* plan participants. Section 3(7) further defines participants to include those individuals who are "or may become eligible to receive a benefit of any type" from an employee plan. Defendants argue that plaintiffs are no longer eligible to receive benefits from the ACL Plan since they have withdrawn from the plan and are not participants in the plan by ERISA's definition. Defendants also argue that plaintiffs lack standing under established constitutional principles that require a personal stake in the outcome of the controversy.

The court finds that defendants' construction of the ERISA definition of "participant" provides an inequitable result which is inconsistent with the terms of ERISA, the express intent of Congress in enacting ERISA, and the relevant case law. In *Hager v. Veco Corp.,* 1 Empl.Ben.Cas. 1827 (N.D.Ill.1979), the court held that permitting an employer to defeat a former employee's "participant" status by distributing his benefits would contravene Congressional intent by eliminating an effective safeguard against a fiduciary's malfeasance. Likewise, if the court held in this action that plaintiffs are not participants in the ACL Plan because they had been "spun off" into the ACI Plan, the plaintiffs would be without recourse to challenge the de-

---

**1.** The "excess assets" consist of the dollar value of the plan's assets which exceeds the present

value of the plan participants' accrued benefits.

fendants' alleged breach of fiduciary duty which occurred while they were full participants in the ACL Plan. Defendants would be shielded from any inquiry by these plan participants into the spin off of the ACI Plan from the ACL Plan. The helpless situation of the plaintiffs and sheltered position of defendants is wholly contrary to ERISA's goal of safeguarding participants and holding fiduciaries responsible for breach of duty.[2] *Id.,* at 1829.

Defendants rely primarily on the court of appeals' decision in *Kuntz v. Reese,* 785 F.2d 1410 (9th Cir.1986). In *Kuntz,* the court held that former employees who had already received their vested plan benefits were no longer plan participants. The court found that plaintiffs were not "participants" because any damages they recovered for alleged fiduciary breaches would not result in an increase of vested plan benefits. *Kuntz* is distinguishable, however, from the case at bar. In *Kuntz,* the court noted that "plaintiffs do not allege that their benefits were improperly computed, rather they allege breach of fiduciary duty or of a duty to disclose information about benefits, thus any recoverable damages would not be benefits from the plan." *Id.* at 1411. In the instant case, the alleged breach of fiduciary duty involves the computation, allocation, and transfer of plan benefits, and plaintiffs do seek to recover for payment of plan benefits: they seek to recover assets from the ACL Plan which they claim should have been transferred to the ACI Plan. The court's holding here is not inconsistent with the holding of *Kuntz.*

Defendants also argue that plaintiffs do not have a sufficient personal stake in the outcome to meet constitutional standards for a case or controversy. Defendants assert that plaintiffs have admitted they have no personal interest in this action because they act only as representatives of the ACI Plan and seek recovery for the plan. This line· of argument is inconsistent with defendants' previous reliance on *Kuntz,*

which held that plaintiffs lacked standing under ERISA because they sought a damage award rather than plan benefits. Section 502(a) of ERISA authorizes suits by participants to help maintain the "financial integrity" of a plan. *See Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 3090 n. 9, 87 L.Ed.2d 96 (1985). Plaintiffs have standing to maintain this action and seek remedies to protect the entire plan rather than individual plan members. *Id.,* 105 S.Ct. at 3090.

■ Defendants also seek summary judgment on Counts One, Two, and Three on the basis that they did not breach any fiduciary duties in making the allocation of assets from the ACL Plan to the ACI Plan. Section 208 of ERISA, 29 U.S.C. § 1058, provides that a pension plan may transfer its assets to another plan only if "each participant in the plan (if the plan then terminated) would receive a benefit immediately after the ... transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the ... transfer (if the plan had then terminated)." Defendants argue that when the ACI Plan spun off from the ACL Plan, they were only required to transfer sufficient assets to comply with Section 208. Plaintiffs argue that compliance with Section 208 was not sufficient to discharge defendants' duties under ERISA. Plaintiffs assert that defendants' decision to transfer a minimum of assets to the new ACI Plan served the interests of the corporate sponsor by keeping all "excess assets" in the ACL Plan, and they argue that this decision to serve the interests of the corporate sponsor rather than the plan beneficiaries is a breach of fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104.

The court disagrees with defendants' position that Section 208 provides the only standard for judging the propriety of defendants' transfer of assets. Defendants contend that application of the "nebulous" fiduciary standards of Section 404 to a

---

**2.** It should be noted that defendants do not question plaintiffs' standing in Count Four to

allege a violation of Section 208 of ERISA and challenge the allocation of assets.

transfer of plan assets would negate the "explicit" standard of Section 208 and leave the defendants with no defined standard to evaluate the lawfulness of the transfer of assets. Defendants also argue that plaintiffs' statutory construction would superimpose ERISA's administrative provisions in Part 4 over its vesting provisions in Part 2. The court is not willing to hold as a matter of law, however, that ERISA's fiduciary standards are inapplicable to the fiduciaries' decisionmaking in a transfer of assets pursuant to Section 208. The decisions regarding allocation and transfer of assets were discretionary, and they directly affected the disposition of plan assets and the interests of plan participants. Section 404 provides that a fiduciary shall discharge his duties with respect to a plan "solely in the interest of the participants and beneficiaries." The court does not see how any important decision regarding a plan's assets, especially if made in the interest of someone other than plan participants as alleged here, could be exempted from this comprehensive standard. *Cf. Leigh v. Engle,* 727 F.2d 113, 124 (7th Cir.1984) (administrators' decisions made in self-interest violate fiduciary standards of ERISA).

The court also does not agree with defendants' assertion that Section 208 provides a definite standard for transfer of plan assets. Section 208 requires a transfer of assets "greater than *or* equal to" the present value of the participants' benefits. Since Section 208 does not provide a concrete method for calculating the appropriate amount of assets to be transferred, does not specify the precise amount of assets to be transferred, and does not claim to be an exclusive standard, it seems logical that the other ERISA guidelines, including the fiduciary standard, should be sought out for further guidance in the transfer decision. *See United States v. Western Electric Co.,* 569 F.Supp. 1057, 1095 (D.D.C.1983) (the most important consideration in the allocation of fund assets is the interest of the participants and beneficiaries).

■ Defendants cite *Foster Medical Corp. Employees' Pension Plan v. Healthco, Inc.,* 753 F.2d 194 (1st Cir.1985) for the proposition that no breach of fiduciary duty occurs and no group of employees is preferred in a plan spinoff as long as the new plan is "fully funded, the employees are fully protected and will receive their defined benefits." *Id.* at 199. The court believes that genuine issues of material fact remain in this case, however, as to whether the allocation of assets to the ACI Plan truly left the ACI Plan "fully funded" and the plan participants "fully protected." Summary judgment is not appropriate based on the *Healthco* holding.

The court does not believe that either side is entitled to summary judgment on Counts One, Two, or Three. Genuine issues of material fact remain regarding whether fiduciary duties were breached in the allocation of assets to the ACI Plan. Therefore, defendants' motion for summary judgment on Counts One, Two, and Three and plaintiffs' motion for partial summary judgment on Count One are denied.

■ Defendants Meidinger, Inc. and First Kentucky Trust Company move for summary judgment on Counts One and Two. Both defendants argue that they in essence performed ministerial tasks in the evaluation and allocation of plan assets and did not have any fiduciary responsibilities. Such is not the case, however. Meidinger is a named fiduciary of the plan under plan Section 15.04(4) for purposes of performing its actuarial duties, and it is still undetermined whether Meidinger and First Kentucky have fiduciary responsibilities pursuant to plan section 13.03, which directs the "Actuary (Meidinger) and Trustee (First Kentucky) to establish (a withdrawing) Employer's interest in the value of the Trust Fund...." If the court accepts the facts as supporting plaintiff's theory of the case, *i.e.,* Section 13.03 gives the Actuary and Trustee fiduciary responsibilities, Meidinger and First Kentucky could be liable for their own alleged breaches of fiduciary duty or could possibly be liable as cofiduci-

aries under Section 405(a) of ERISA, 29 U.S.C. § 1105(a), for a breach of fiduciary duty by Texas Gas or American Commercial Lines. In any event, genuine issues of material fact remain regarding the status of Meidinger, Inc. and First Kentucky Trust Company as fiduciaries and their alleged liability if found to be fiduciaries. The separate summary judgment motions of these two defendants must be denied.

■ Count Four alleges that defendants breached their fiduciary duties by miscalculating the amount of assets to be transferred to the ACI Plan and by violating Section 208 of ERISA in the overall transfer of assets. Defendants have admitted a computational error by Meidinger, Inc. in the transfer of assets, and plaintiffs seek partial summary judgment based on this error. Defendants seek summary judgment on Count Four on the basis that the computational error was not a breach of fiduciary duty and that Section 208 was not violated in the allocation and transfer of assets to the ACI Plan. The lengthy briefing of the parties' contentions concerning how the valuation, allocation, and transfer of assets were performed and allegedly should have been performed shows that genuine issues of material fact remain as to whether any breach of fiduciary duty occurred as alleged in Count Four. The parties' summary judgment motions on Count Four are denied.

■ Defendants move for summary judgment on plaintiffs' RICO claim in Count Five. Defendants' most persuasive contention is that plaintiffs are unable to prove a "pattern of racketeering activity." Plaintiffs allege that in addition to the alleged breach of fiduciary duties in the transfer of assets to the ACI Plan, defendants breached fiduciary duties in the transfer of assets to the Commercial Carriers, Inc. Pension Plan when Commercial Carriers, Inc. (CCI) withdrew from the ACL Plan on January 1, 1981. Plaintiffs argue that the alleged breaches of fiduciary duties in the transfer of assets to the ACI and CCI Plans constitute a pattern of racketeering activity.

Proof of a pattern of racketeering activity "requires more than one 'racketeering activity' and the threat of continuing activity to be effective." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). A single, fraudulent scheme with several fraudulent acts fails to establish a pattern of racketeering activity. *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986). Plaintiffs' allegations, if proven in this case, could only establish one single scheme by defendants: their plan to keep all "excess assets" in the ACL Plan and transfer a minimum of assets to the various withdrawing employers, including ACI and CCI. There are no allegations of separate acts which would constitute a "pattern." The single decision to withhold excess assets is not a pattern, and the alleged predicate acts, which are subdivisions of the single scheme, also do not constitute a pattern. *See Madden v. Gluck*, 636 F.Supp. 463, 465 (E.D.Mo.1986). Defendants' motion for summary judgment on Count Five will be granted.

Defendants move to strike plaintiffs' demand for a jury trial in Counts One through Four and plaintiffs' prayers for punitive damages in Counts One through Three. For reasons previously stated by the court in *Rausch v. Damon*, No. 83–1161–CV–W–8 (W.D.Mo. Sept. 5, 1984) [Available on WESTLAW, DCTU database], plaintiffs are not entitled to a jury trial or punitive damages on their ERISA claims, and these requests will be stricken. For the reasons stated, it is

ORDERED that defendants' joint motions for summary judgment on Counts One, Two, Three, and Four of plaintiffs' second amended complaint are denied. It is further

ORDERED that defendants' joint motion for summary judgment on Count Five of plaintiffs' second amended complaint is granted. It is further

ORDERED that plaintiffs' motions for summary judgment on Counts One and Four of their second amended complaint are denied. It is further

ORDERED that defendants' motion to strike plaintiffs' demands for jury trial and for punitive damages is granted. It is further

ORDERED that the separate motions of Meidinger, Inc. and First Kentucky Trust Company for summary judgment are denied.