**Benjamin E. BASS, Jr., et al.**

v.

**RETIREMENT PLAN OF CONOCO, INC., et al.**

**Civ. A. No. 86–1704–LC.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Jan. 4, 1988.

Louis L. Robein, Jr., Gardner, Robein & Healey, Metairie, La., for plaintiffs.

Keith M. Pyburn, Jr. and Howard Shapiro, McCalla, Thompson, Pyburn & Ridley, Walter C. Thompson, Jr., Sessions, Fishman, Rosenson, Boifontaine, Nathan & Winn, New Orleans, La., for defendants.

## OPINION

VERON, District Judge.

Benjamin E. Bass and one hundred and twenty-six other plaintiffs brought this action under the Employee Retirement Income Security Act (ERISA) 29 U.S.C. § 1001 *et seq.*, seeking injunctive relief, along with attorneys' fees and costs, for alleged violations of fiduciary duties and other provisions thereof. The original complaint filed on August 4, 1986 named as defendants Conoco, Inc., Vista Chemical Company, their respective retirement plans and retirement boards and the individual members thereof. The complaint was amended three times and the number of plaintiffs is now one hundred forty-two. The matter is now before the court on Motion for Summary Judgment, the court having converted a 12(b) motion of the Conoco defendants to permit the parties to submit additional materials. After a thorough examination of the record and the applicable law the court finds that there is no genuine issue of material fact and that the Conoco defendants are entitled to judgment as a matter of law.

## I. FACTS

In their complaint the plaintiffs seek declaratory and injunctive relief, along with attorneys' fees and costs, against defend-

ants for alleged violations of fiduciary duties in ERISA arising out of the failure to offer (to the Group I plaintiffs) an Early Retirement Opportunity Benefit (ERO) and (to the Group II plaintiffs) a Separation Benefit from the defendant Retirement Plan of Conoco, Inc., to which the plaintiffs claim they would have been entitled but for certain alleged actions of the defendants. The two types of benefits at issue shall be referred to herein collectively as ERO.

The material facts are not in dispute. The plaintiffs are employees of Vista Chemical Company (Vista) who work at the Westlake, Louisiana chemical plant. Prior to July 20, 1984 they were employed by Conoco, Inc. (Conoco) at the same facility. Their change in employment status resulted from the July 20, 1984 sale by Conoco to Vista, which was established by active and retired senior managerial employees of Conoco, of certain Conoco assets, including the Westlake Chemical plant. Conoco, Inc., a wholly owned subsidiary of E.I. DuPont de Nemours and Company (DuPont) retained its refinery operation in Lake Charles and continues to employ workers there. The plaintiff chemical plant employees began to receive Vista paychecks in July, 1984. Vista is a nonaffiliated company with respect to both Conoco and DuPont, that is, neither the predecessor Conoco nor its parent corporation DuPont own an interest in Vista.

Prior to July 20, 1984, chemical plant management, all of whom were committed to transfer to Vista at Closing (July 20, 1984), met with officials of Oil, Chemical and Atomic Workers Union (OCAW) Local 4–555 (of which not all plaintiffs are members) to negotiate a collective bargaining agreement which would become effective for Vista employees at Closing. Two agreements, one for the production and maintenance unit and one for the office and clerical unit, were reached between Vista and OCAW. These agreements contained virtually identical provisions regarding the

pension and benefit plans of the new Vista Chemical Company.*

Pursuant to those agreements and consistent with notices of intent which had previously been furnished by Conoco to each proposed Vista employee, at Closing the Vista Plan was identical to the Conoco Plan. All credits toward benefits as defined under the Conoco Plan at Closing were to be applicable in the same values to benefits under the newly created Vista Plan. The Vista employees were to be participants in the Vista Plan from the date they were transferred from Conoco's payroll to that of Vista.

In their preparations for Closing, Vista and Conoco anticipated that Vista would not have sufficient time to develop and file its retirement plan with the Internal Revenue Service (IRS) or receive IRS tax qualification for the Vista Plan prior to Closing. A transfer of the Vista Plan funds out of the Conoco Plan trust account into a separate trust account for the Vista Plan before the latter was tax qualified could have resulted in serious adverse tax consequences. In order to accommodate these tax considerations, Vista and Conoco structured an agreement under which the Conoco Plan would hold the Vista Plan assets until the Vista Plan received its IRS qualification. Under the agreement, the chemical plant employees stopped accruing benefits under the Conoco Plan and began accruing benefits under the Vista Plan on July 20, 1984. Actuarial calculations as of that same date were made by Buck Consultants, Inc. in New York of the actuarial accrued liability (whether or not vested) to be transferred to the Vista Plan. The Vista Plan assets thus designated and held in trust in the Conoco account began to accrue interest from July 20, 1984 at the annual compound rate of 13.42%. This arrangement was consistent with prior disclosures to prospective Vista personnel by Conoco in the Vista Benefits Booklet, and with the Letter of Agreement with OCAW.

---

* The only substantive differences between the Conoco Plan and the proposed Vista Plan arose from the fact that Vista was not a stock company. The Vista collective bargaining agreement substituted Fidelity Group's Magellan Fund and Freedom Fund for company stock-based features of the Conoco savings and investment plan.

The Vista Plan received IRS qualification on July 30, 1985. On October 1, 1985 the Vista Plan funds held in trust by the Conoco Plan were "physically" or officially, so far as the IRS was concerned, moved from the Conoco Plan account to Vista's qualified plan. The amount of the transfer was $17,476,649.66. This figure was arrived at based on the calculation as of July 20, 1984 when 1,337 Conoco employees transferred to Vista.

The transferred total of October 1, 1985 reflects additional accrued liability and interest due to one employee who transferred on September 1, 1984 and six employees who transferred on November 1, 1984. The transferred total also reflects a deduction for certain Vista employees who exercised their retirement rights during the intervening period when they could not be paid benefits under the auspices of the yet-to-be-qualified Vista Plan. These retirees received, at least nominally, Conoco retirements for which the accrued liability was not transferred to the Vista Plan.

On the July 20, 1984 Closing date the Conoco Plan did not have the ERO feature to which the plaintiffs seek a declaration of entitlement. There had been high-level discussion at DuPont of a "permanent excess [personnel] problem" both at DuPont and at Conoco before or during July 1984. A DuPont task force formed in late November or early December 1984 ultimately recommended offering enhanced benefits from DuPont's Retirement Plan to DuPont Plan participants who voluntarily elected to retire and then did so during designated window periods. This program was called the Early Retirement Opportunity or ERO. Actuarial studies for the DuPont ERO were undertaken in December, 1984. The finished DuPont ERO proposal was approved by the Executive Committee of DuPont on January 11, 1985 and announced to DuPont employees on January 29, 1985. The first actuarial study for a Conoco ERO was begun on January 25, 1985. On February 18, 1985 the Management Committee of the Board of Directors of Conoco directed the Trustees of the Retirement Plan of Conoco to implement ERO.

The Conoco ERO was made available only to "qualified employees" who on or after March 1, 1985 but prior to April 9, 1985, voluntarily elected to retire or terminate their employment. The window period for the election was on or after March 1, 1985 but prior to April 9, 1985. The window period for the termination required that such qualified employees making the election terminate employment with at least one hour of service after February 28, 1985 and before May 1, 1985. The consent action of the Conoco Retirement Board announcing the Conoco ERO on March 11, 1985 defines "qualified employee" to exclude those Conoco employees above a certain salary grade and those who have accepted severance pay. Under the program such qualified employees so electing would be deemed to have an additional five years of service for determining ERO eligibility, five years of creditable service for determining the amount of retirement benefits, and five years of age for determining eligibility for a Normal and Early Retirement benefit and for determining the reduction factors used to calculate an ERO benefit.

After the Conoco ERO was announced, most of the plaintiffs contacted Vista's personnel department about applying for it. They were informed that Vista would not be offering ERO and were referred to Conoco. On March 28, 1985 these plaintiffs wrote to Trenton Buell, Conoco's Manager of Employee Benefits and applied for ERO. He responded by letter of April 23, 1985 that ERO was for Conoco and affiliated company employees only. Citing specific sections of the Conoco Plan document, he explained that the word "employee" was defined therein so as to include only persons employed by Conoco, DuPont or companies in which Conoco or DuPont owned at least twenty-five percent of the voting stock, and that an "hour of service" refers to service to "the Company", *i.e.* Conoco. He concluded in the letter that since the Vista applicants were not Company employees and had earned no Conoco service after February 28, 1985, they were ineligible for ERO. The letter also notified the applicants of their right under the Conoco administrative review procedure to appeal

the denial in writing within sixty days to the Plan Administrator of the Retirement Board of Conoco, Inc.

All of the plaintiffs appealed, including some who had not submitted initial requests to receive ERO. Conoco treated these latter as if they had applied for ERO and had been turned down. Plaintiffs were represented by counsel in the appeal. The Conoco Retirement Board rejected the claimants' appeal by a Unanimous Consent Action of on or about August 30, 1985, restating the reasons given by Mr. Buell and noting that all of the claimants had terminated their employment with Conoco on or about July 20, 1984. The Board also stated that the claimants were not Conoco Plan participants notwithstanding that the Vista Plan assets had not been transferred since tax qualification for the Vista Plan had not yet been received from IRS. This lawsuit followed.

## II. PRELIMINARY ISSUES

### A. *Jurisdiction and Standing*

The present motion of the Conoco defendants raises the issues, among others, whether this court has subject matter jurisdiction over a suit by these plaintiffs under ERISA, and whether the plaintiffs have standing under ERISA to bring suit against the Conoco defendants in federal court.

"Participant" status carries the right to bring civil actions in federal court under ERISA. A "participant or beneficiary" may sue in federal court to recover benefits under 29 U.S.C. § 1132(a)(1)(B). A "participant, beneficiary, or fiduciary" may sue to enjoin ERISA violations under 29 U.S.C. § 1132(a)(3). "Participant" is a defined term under ERISA:

> The term "participant" means an employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer....

29 U.S.C. § 1002(7). Thus for standing purposes the definition of "participant" is ultimately circular, defining the right to sue in terms of actual substantive entitle-ment. The definition of ERISA "participant" in 29 CFR § 2610.2 employs similar methods.

The Conoco defendants argue that the plaintiffs are not presently "participants" in the Conoco Plan, therefore they lack ERISA standing against Conoco and consequently this Court is without subject matter jurisdiction to hear their claim against Conoco.

■ Despite dicta implying the contrary in *Nugent v. Jesuit High School of New Orleans*, 625 F.2d 1285, 1286 n. 3 (5th Cir.1980) and *Stanton v. Gulf Oil Corp.*, 792 F.2d 432, 434 (4th Cir.1986), the determination of ERISA "participant" status is not, or will rarely be, jurisdictional. *Nugent* and *Stanton* were both decided on the merits, which they could not have been if jurisdiction had been lacking. The ERISA standing analysis cuts to the heart of the merits, so that a determination of no standing does not deprive the court of jurisdiction. *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.*, 690 F.2d 489, 499 at n. 4 (5th Cir.1982); *see, Lewis v. Knutson*, 699 F.2d 230, 236–37 (5th Cir.1983); *Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir.1981). The strict standard of facial scrutiny in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) applies so that dismissal for lack of subject matter jurisdiction is improper unless the allegation of participant status in the complaint " 'has no plausible foundation' or 'is clearly foreclosed by a prior Supreme Court decision.' " *Williamson v. Tucker*, *supra*, 645 F.2d at 416, *quoting Bell v. Health–Mor, Inc.*, 549 F.2d 342 (5th Cir. 1977). The allegations in the present complaint of actual or threatened injury, either to the plaintiffs, see *Lewis v. Knutson*, *supra*, 699 F.2d at 236, or to the plan itself, see *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), satisfy the Article III jurisdictional standing requirement. The claim to participant status is not without plausible foundation. Subject matter jurisdiction is present.

The Conoco defendants assert that a plaintiff cannot be a "participant" for ERISA standing purposes unless he or she is either a current employee who "may be eligible" to receive a benefit or a former employee with currently vested benefits in the employer's plan. For this proposition they cite several cases, all distinguishable. *Joseph v. New Orleans Electrical Pension & Retirement Plan*, 754 F.2d 628 (5th Cir.), *cert. denied* 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1986) and *Kuntz v. Reese*, 785 F.2d 1410 (9th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986) both involved plaintiffs who had already received their retirement benefits by lump sum distribution. The plaintiff in *Stanton v. Gulf Oil Corp., supra,* sought additional early retirement benefits made available for the first time after he had retired. In *Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d 473 (2d Cir.1985) the plaintiff was terminated without ever having been covered by an ERISA pension plan. In *Nugent v. Jesuit High School of New Orleans, supra,* the plaintiff had never been vested in an ERISA pension plan.

The Conoco defendants cite no case where the plaintiff was formerly a participant in the defendant's plan and is now in a "spin-off" plan as a result of a sale of an ongoing business or division. Numerous such cases have been reported, including one affirmed by the Supreme Court, where the predecessors have been sued. In not one of them has a federal court held that the former employees lacked standing. The practice of the courts has been to disregard the distinction between participation in the predecessor and successor plans for standing purposes. *See, e.g., Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623 (6th Cir.1987); *Phillips v. Amoco Oil Co.,* 799 F.2d 1464 (11th Cir.1986), *cert. denied* — U.S. ——, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987); *Pabst Brewing Co. v. Anger,* 784 F.2d 338 (8th Cir.1986); *Holland v. Burlington Industries, Inc.,* 772 F.2d 1140 (4th Cir.1985), *aff'd without opinion sub nom Brooks v. Burlington Industries, Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986) *and cert. denied sub nom Slack v. Burlington Industries, Inc.,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); *Jung v. FMC Corp.,* 755 F.2d 708 (9th Cir.1985); *Sly v. P.R. Mallory & Co. Inc.,* 712 F.2d 1209 (7th Cir.1983).

The standing issue in the present context was squarely addressed in *Bigger v. American Commercial Lines, Inc.,* 652 F.Supp. 123 (W.D.Mo.1986):

The court finds that defendants' construction of the ERISA definition of "participant" provides an inequitable result which is inconsistent with the terms of ERISA, the express intent of Congress in enacting ERISA, and the relevant case law. ... [I]f the court held in this action that plaintiffs are not participants in the ACL Plan because they have been "spun off" into the ACI Plan, the plaintiffs would be without recourse to challenge the defendants' alleged breach of fiduciary duty which occurred while they were full participants in the ACL Plan.

652 F.Supp. at 125–26 (citations omitted). This court finds the reasoning of the district court in *Bigger* to be sound. In *Massachusetts Mutual Life Insurance Co. v. Russell, supra,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96, the Supreme Court discussed ERISA and its legislative history, emphasizing the congressional purpose of seeing that retirement plans are not mismanaged or abused. *See,* 105 S.Ct. 3085, 3090 at n. 9. To deny standing in cases such as the present one would potentially thwart that purpose. The rules developed for one purpose should not automatically be applied to another where one term such as "participant" is made key to such diverse questions as jurisdiction, standing, and entitlement to disclosure, attorneys' fees or actual benefits. It is this court's view that a plaintiff who would have had participant standing, but for the spin-off of the plan of which they are members, retain standing to sue the defendants who would have been proper had the spin-off not occurred, *i.e.* the predecessors, as well as the successors.

On page fourteen of their opposition memorandum (Record, document 51), the plaintiffs refer to a "great many" among them having been vested under the Conoco Plan. This would imply that some of them were not, in which case *Nugent v. Jesuit High School of New Orleans, supra,* 625 F.2d 1285, would require this court to hold that those plaintiffs have no standing against the Conoco defendants. However, dismissal at this point under Rule 12(b)(6) or summary judgment under Rule 56 requires that every benefit of the doubt be given to these plaintiffs opposing the motion. *See, Kaiser Aluminum, etc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045 (5th Cir.1982), *cert. denied* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983) (motion to dismiss); *Simmons v. Lyons,* 746 F.2d 265 (5th Cir.1984) (summary judgment). The fact that the Code of Federal Regulations includes some "non-vested individual[s] not currently in employment covered by the plan but who [are] ... retaining credited service under the plan" in its definition of "participant" contributes to the doubt on this issue. 29 CFR § 2610.2(a)(2). For purposes of this ruling all plaintiffs are considered to have standing. This supposition does not affect the result herein.

B. *Existence of Material Fact Issues*

▇ The plaintiffs argue in their opposition memoranda that the existence of certain fact issues precludes summary judgment herein. A grant of summary judgment is appropriate only where it appears from the pleadings, depositions, admissions, answers to interrogatories and affidavits, considered in the light most favorable to the opposing party, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.Rule Civ. Pro. 56(c); *Simmons v. Lyons, supra; Dorden v. C.H. Heist Corp.,* 743 F.2d 1135 (5th Cir.1984).

The first such issue advanced by plaintiffs is whether or not the Conoco defendants knew as early as July 20, 1984 that ERO would be offered to Conoco employees six months later. The issue is immaterial, since as a matter of law the employer

has no duty to disclose future benefit enhancements. In *Stanton v. Gulf Oil Corp.,* 792 F.2d 432 (4th Cir.1986) the plaintiff asked an employee in the company's Human Resources office whether any more advantageous retirement program would soon be available, and was informed that to the employee's knowledge there would not. That was on November 29, 1982 and on the next day Stanton retired. In fact, on November 11, 1982 an enhanced retirement plan had been approved by Gulf's Board for announcement on November 30, 1982 but which was not to be applicable to employees in Stanton's grade until the following March 14th. Stanton's suit was dismissed on summary judgment; since he had retired he was held to lack "participant" standing to sue. In affirming, the Court of Appeal made the following statement with which this court thoroughly agrees:

It is not a violation of ERISA to fail to furnish information regarding amendments before these amendments are put into effect. *See Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300, 1306 (9th Cir.1982); *Fine v. Semet,* 699 F.2d 1091, 1094, (11th Cir. 1983). This is so because the legislative intent of ERISA was not to assure the sanctity of early retirement expectations, but to safeguard accrued retirement benefits. *Bencivenga v. Western Pa. Teamsters,* 763 F.2d 574, 577 (3d Cir.1985).

*Stanton v. Gulf Oil Co., supra,* 792 F.2d at 435.

Moreover, viewing the plaintiffs' materials in the most favorable light, the court still cannot conclude that this factual issue, if material, is genuine. It is clear from all of the statements in the record by Conoco and DuPont personnel, some of which were submitted by plaintiffs, that none of them had knowledge of any ERO plan for Conoco as far back as July 1984. There is nothing in the record of even the slightest reliability to indicate otherwise, but only opinion and rumor which are no better than resting on the pleadings.

The plaintiffs argue that misrepresentation by virtue of the language employed in

the Vista Plan proposals and document presents a question of material fact. This is a mixed question, all the factual elements of which are in the record and which are not disputed. See the discussion at III B *infra*.

The plaintiffs argue that the question of when the Vista Plan came into existence presents a material fact issue. This also is a mixed question, the completely undisputed factual elements of which are all in the record. While this could be considered a preliminary issue, it is most relevant to the claim under 29 U.S.C. § 1054(g), so it will be treated in part III E *infra*.

Finally, the plaintiffs characterize as a fact issue

> whether the brazen use of Conoco pension assets under the direction of Conoco corporate officers, who also served as plan fiduciaries, to fund a corporate program to solve a "permanent excess problem" within the corporate organization placed those plan fiduciaries in a position of compromised and divided Loyalties.

Plaintiffs' memorandum, p. 23, Record, document 51. This is clearly a question of law. No facts relative to this issue are in dispute.

### C. *Standard of Review*

The Conoco defendants argue that the actions of the Conoco Retirement Board in denying the plaintiffs' claims for ERO are reviewable only under the "arbitrary and capricious" standard. The plaintiffs counter that since they are asserting statutory ERISA violations, no deference should be given to the findings of the Board.

This area of the law is in a state of flux. It is thoroughly analyzed in the persuasive recent opinion of *Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134 (3rd Cir. 1987), which traces the origin of the arbitrary and capricious standard in ERISA to its use under the Labor Management Relations Act, which contains elaborate provisions to ensure the administrator's neutrality, and to the common law of charitable trusts. The court points out the inherent conflict of interest that exists in the administration of an ERISA plan which is funded solely by the employer without employee contributions, unlike the funded plan at issue here:

> Because the plan is unfunded, every dollar provided in benefits is a dollar spent by defendant Firestone, the employer; and every dollar saved by the administrator on behalf of his employer is a dollar in Firestone's pocket.

828 F.2d at 144. Consequently the Third Circuit in *Bruch* rejects the arbitrary and capricious standard where impartiality is an issue, and sees no reason to defer to the administrator's expertise where the claim turns on a question of contract interpretation or of law, as opposed to, for example, how best to invest plan funds. *Id.* at 144 and n. 9.

On the other hand, the Third Circuit retains the arbitrary and capricious standard as "entirely appropriate" where the question is whether the trustees have correctly balanced valid competing interests among present and future beneficiaries of the plan, or in matters of true expertise such as investment decisions "so long as a conflict of interest is not alleged." *Id.* at 144.

These views are not necessarily inconsistent with Fifth Circuit jurisprudence. The Fifth Circuit has emphatically required, in claims for benefits, the development of an administrative record to which the arbitrary and capricious standard could be applied where the decision to deny a benefit was based on the fact that allowing the claim "might impair the Plan's ability to meet the future retirement obligations of other ... employees." *Denton v. First National Bank of Waco, Texas*, 765 F.2d 1295, 1298 (5th Cir.1985). However, the standard as applied in the Fifth Circuit in ERISA cases is not the arbitrary and capricious standard described in *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985) which commented that "it is not much of an overstatement ... to say that a decision is not arbitrary and capricious whenever a court can review the reasons stated for the decision without a loud guffaw." In a case involving a suit for benefits turning on plan interpretation, the Fifth Circuit held it error for the district court to base a decision on the finding that

an interpretation is not "wholly implausible" without first determining "what the 'legally' correct interpretation of the Plan provisions should be." *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982). The court stated that the correctness of the trustee's interpretation, while not in itself controlling, is a factor in the determination, along with conduct of the trustee from which the court could infer a lack of good faith. *Id.*

In *Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir.1983), which was a suit for injunctive relief based on fiduciary provisions of ERISA rather than for benefits based on construction of the plan, the arbitrary and capricious standard was not applied. Rather, the standard was that established in ERISA for fiduciaries, therefore the issue was one of statutory interpretation. Thus whether or not the standard to be employed is *de novo* depends on whether the statute in question confers discretion on the fiduciary, as it did in that case. *See id.* at 1467.

Unlike their application and appeal to Conoco, the plaintiffs' present suit does not seek a determination, based on the plan document, that they are entitled to benefits. Instead the plaintiffs seek declaratory and injunctive relief, alleging that the ERO as conceived was intended, and that the Plan amendment implementing ERO was specifically drafted, to exclude the plaintiffs, at least in part because giving ERO to these Vista employees would not further the business objective of reducing the workforce at Conoco. The Conoco defendants admit these allegations but contend that they do not constitute any statutory violations. The court is inclined to view the arbitrary and capricious standard as described by the defendants inappropriate in this case. Any error in this regard would be harmless, however, since it is apparent to the court that the plaintiffs cannot prevail under even the least deferential standard.

## III. THE MERITS

### A. *Exclusive Purpose Violations*

The petition alleges six counts, each styled a "cause of action". The first count alleges that the defendants violated their fiduciary responsibilities by intentionally excluding the plaintiffs and preferring other employee-participants for business purposes unrelated to the purpose of providing benefits to participants in violation 29 U.S. C. § 1104(a)(1)(A)(i), a fiduciary duty provision which sets forth the "prudent man" standard of care. The second count makes the same allegations, this time styled a violation of 29 U.S.C. § 1103(c)(1) which can be called the "exclusive purpose" provision, providing that plan assets are not to inure to the benefit of an employer.

The plaintiffs' argument is that Conoco's admitted purpose of reducing its workforce in offering ERO only to those designated as "qualified employees" was a use of plan assets for a purpose other than providing benefits to participants and which inured to Conoco's own benefit in violation of the above statutes.

■ The type of "benefit" which Conoco reaped as a result of its employees voluntarily electing to separate or retire for enhanced benefits is completely secondary to the benefit provided to those employees who elected ERO. The statutes are intended to prevent the use of plan funds for the primary benefit of the employer, *e.g.* actual conversions, or self-serving investment in company securities without the requisite consideration due to the beneficiaries' interests, see *Donovan v. Cunningham, supra,* 716 F.2d at 1467.

The statute forming the basis of count two provides in pertinent part:

§ 1103 Establishment of trust

(c) Assets of plan not to inure to benefit of employer; allowable purpose of holding plan assets

(1) Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans) the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing bene-

fits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan. 29 U.S.C. § 1103(c)(1). The exceptions which follow make it clear that the statute addresses circumstances in which an employer takes funds out of the plan and converts them back to its own use. Subsection (c)(2) permits under certain circumstances the retrieval of mistaken or conditional contributions. Subsection (c)(3) permits retrieval of excess contributions to avoid excise tax on such excesses. Subsection (c)(4) permits retrieval of overpayment within six months of an overpayment determination.

The plan assets used for ERO did not go into Conoco's pocket, but to Conoco employees for whom the trust exists. As the Sixth Circuit has stated:

> The language of ERISA stating that "the assets of a plan shall never inure to the benefit of any employer" cannot be read as a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective.

*Holliday v. Xerox Corp.*, 732 F.2d 548, 551 (6th Cir.1984).

■ The statute on which count one is based provides, in pertinent part:

§ 1104. Fiduciary duties

(a) Prudent man standard of care

(1) Subject to sections 1103(c) and (d), 1342 and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter.

29 U.S.C. § 1104(a). Again, under this statute "[i]t is no violation of a trustee's fiduciary duties to take a course of action which reasonably promotes the interest of plan participants simply because it incidentally also benefits the corporation." *Morse v. Stanley*, 732 F.2d 1139, 1146 (2nd Cir. 1984). Nor are the fiduciary provisions of ERISA violated where the terms of a sale affect contingent, non-accrued and non-vested future retirement benefits even though they had been previously offered. *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.1986).

■ Indeed, Conoco would have risked running afoul of this provision if it *had* offered ERO to the plaintiffs. Although this court has allowed that the plaintiffs have standing, that does not mean they were participants, substantively, in the Conoco Plan when ERO was offered. Plaintiffs argue that under the Conoco Plan's break in service provisions they remained participants for one year after their transfer to Vista. Those provisions do not contemplate this situation where both the employment and the benefit plan are spun off. Even if they did, Conoco's loyalty would have been misplaced to offer valuable benefits out of the Conoco Plan to Vista employees for whom a separate plan had been established, see the discussion at III E *infra*. (Nor, for that matter, would Conoco have been justified in so interfering with the business affairs of Vista by precipitating an undesired reduction of Vista's workforce.)

*Odgen v. Michigan Bell Telephone Co.*, 657 F.Supp. 328 (E.D.Mich.1987) involved

an early retirement program offered only to surplus employees as a means of workforce reduction. The reasons for offering the benefit were held not to implicate the fiduciary provisions of ERISA at all. *Id.* at 335. The decision of whom is "surplus", however, might be seen as an eligibility, hence fiduciary, decision, see *id.* at 334. If the plaintiffs did have a valid interest by virtue of the fact that their plan assets were still being held in trust in the Conoco Plan account, it cannot be said that the Conoco defendants breached a fiduciary duty in finding that interest to be outweighed by the interests of future claimants under the Conoco Plan.

### B. *Discrimination*

■ The third count alleges that the conduct of the Conoco defendants in causing the plaintiffs to be excluded from ERO was discrimination in violation of ERISA. The statute plaintiffs contend supports this claim provides in pertinent part:

§ 1140. Interference with protected rights

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C. § 1140.

The contention is without merit. The plaintiffs cannot seriously suggest, and nothing in the record gives the least indication, that Conoco entered this six hundred million dollar sale of assets for the purpose of preventing the plaintiffs from receiving ERO. Nor is there anything sinister or illegal in the fact that, having decided to offer ERO, the Conoco defendants drafted and construed the term "qualified employee" so as to exclude Vista personnel. As discussed in the previous section, it may well have been their duty to the Conoco employee-participants to do so.

The plaintiffs make too much of the statutory language "may become entitled"; they suggest a meaning which is far too attenuated. The purpose of § 1140 is to prevent discharge or constructive discharge of specific employees to prevent their pension rights from vesting. See the thorough discussion of the statute and its legislative history in *West v. Butler,* 621 F.2d 240, 245–46 (6th Cir.1980). To give the statute the meaning advanced by plaintiffs would mean that an employer could never sell a division unless it ensured that the provisions of the vendee's plan forever mirrored those of the vendor's plan. It is settled law that ERISA does not require this. *See, Dougherty v. Chrysler Motors Corp.,* 652 F.Supp. 1529 (E.D.Mich.1987) and the cases cited therein.

### C. *Misrepresentation*

The fourth count alleges that the Conoco defendants breached their fiduciary duty to the plaintiffs in that intentional misrepresentation by defendants of pension plan entitlements while plaintiffs were Conoco employees caused plaintiffs to rely thereon to their detriment. As discussed in section II B above, there is no duty of disclosure in regard to future benefit enhancements, nor is there anything in the record to show that Conoco had any ERO information to withhold while plaintiffs were still Conoco employees. The president of the OCAW local, plaintiff Summers, claimed in deposition that the lack of such information adversely affected his negotiations on behalf of union employees with Vista. Such a claim might be pre-empted by the National Labor Relations Act, see *U.S. 198 Health & Welfare, Education & Pension Funds v. Rester,* 790 F.2d 423 (5th Cir.1986) (union's ERISA suit arising out of collective bargaining agreement was pre-empted by NLRA and the NLRB had primary jurisdiction). In any event the count is factually unsupported and plaintiffs do not brief it. It is clear from the record that the plaintiffs understood that the benefits provided by the Vista Plan as of Closing would be substantially the same as those provided by the Conoco Plan at Closing, *i.e.* before the ERO amendment.

### D. *Elimination of a Benefit*

The fifth count alleges a violation in that Conoco adopted plan amendments "which

had the purpose and effect of eliminating or reducing early retirement benefits or optional forms of benefits to the named plaintiffs." (Complaint, p. 15). The subsection, as allegedly applicable to the events herein, provides:

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan ...

(2) For the purposes of paragraph (1), a plan amendment which has the effect of

(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy ... or

(B) eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

29 U.S.C.A. § 1054(g) (West main volume 1985).

Subsection (g)(2) was added in 1984 and was by special provision made applicable to plan amendments made after July 30, 1984. *See*, Pub.L. 98–397, 98 Stat. 1451, Title III, § 302(d), Aug. 23, 1984. The legislative history of the subsection elucidates its purpose:

[This subsection] protects the accrual of benefits with respect to participants who have met the requirements for a benefit as of the time a plan is amended and participants who subsequently meet the preamendment requirements. The bill does not, however, prevent the reduction of a subsidy in the case of a participant who, at the time of separation from service (whether before or after the plan amendment), has not met the preamendment requirements.

\* \* \* \* \* \*

Accordingly, if a benefit subsidy is provided, for example, only for employees who retire during a "window period," the provision would not require that benefits of an employee who does not retire during the window period include the window benefit.

P.L. 98–397, S.Rep. 98–575, 130 Cong.Rec. 130, 1984 U.S.Code Cong. & Admin.News, 2547, 2574.

The point is not simply that the plaintiffs failed to retire during the window period, but that window period benefits do not enter into the determination that an accrued benefit was eliminated or reduced in violation of 29 U.S.C. § 1054(g) unless (1) the claimant was entitled to the benefit, (2) the benefit was accrued, and (3) the accrued benefit was subsequently eliminated or reduced. In order to eliminate the trap which can occur where a retiree would lack ERISA standing to sue, a benefit to which a claimant is entitled should be considered accrued if the claimant can show that he did not retire during the window period because his entitlement was disputed and he wished to preserve his standing.

While the plaintiffs show that they would have retired during the window period if they could have received ERO, they fail in the prerequisite entitlement prong since they were not qualified (Conoco) employees. Consequently their failure to receive ERO cannot be seen as a subsequent elimination of an accrued benefit to which they were entitled. The argument that the drafting of the amendment so as to exclude the plaintiffs from entitlement constitutes a violation of § 1054(g) does not fit the purpose of this statute and depends on a tortured interpretation of the word "eliminating." The ERO amendment created a benefit; it did not eliminate any pre-existing one.

E. *Inadequate Transfer*

The sixth and final count alleges violation of 29 U.S.C. § 1058. That section provides, in pertinent part:

A pension plan may not ... transfer its assets or liabilities to, [sic] any other plan ... unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the ... transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the ... transfer.

29 U.S.C. § 1058.

For this count the plaintiffs rely on the following premises: first, that the Vista Plan came into existence on October 1,

1985 when the actuarial accrued liability attributable to the Vista employees, and the interest thereon, was transferred into the tax qualified Vista Plan account; second, that as substantive participants in the Conoco Plan the plaintiffs were entitled to ERO immediately before October 1, 1985 but not after, due to their participation in the Vista Plan as of that date. The second premise has already been rejected in part III A, *supra*. As the plaintiffs have asserted, the ERO amendment excludes the plaintiffs who were not Conoco employees with at least one hour of service after February 28, 1985. Those criteria were within the defendants' discretion. Because that conclusion relies peripherally on the conviction that the Vista Plan came into existence on July 20, 1984, the issue raised by the first premise will be addressed here.

■ Treas.Reg. § 1.414(1) interprets 26 U.S.C. § 414(1), an Internal Revenue Code provision substantially similar to 29 U.S.C. § 1058. Treas.Reg. § 1.414(1)—1(b)(11) provides guidelines for determining the date of a merger or spin-off. The plaintiffs argue that since 29 U.S.C. § 1202(c) makes certain other Treasury Regulations interpreting the Internal Revenue Code statutorily relate to ERISA and congress made no such provision relative to Treas.Reg. § 1.414(1), the regulation should not be applied. However, that regulation has been applied by federal courts interpreting 29 U.S.C. § 1058, *e.g.*, *Hickerson v. Velsicol Chemical Corp.*, 778 F.2d 365, 374 (7th Cir.1985); *Van Orman v. American Insurance Co.*, 608 F.Supp. 13, 25–28 (D.N.J. 1984). Although application of the regulation may not be required, it is perfectly proper because the regulation uses the same factors a court would use in the absence of such guidance. It provides:

(11) *Date of Merger or Spinoff.*

The actual date of a merger or spinoff shall be determined on the basis of the facts and circumstances of the particular situation. For purposes of this determination, the following factors, none of which is necessarily controlling, are relevant:

(i) The date on which the affected employees stop accruing benefits under one plan and begin coverage and benefit accruals on another plan.

(ii) The date as of which the amount of assets to be eventually transferred is calculated.

(iii) If the merger or spinoff agreement provides that interest is to accrue from a certain date to the date of actual transfer, the date from which such interest will accrue.

Treas.Reg. § 1.414(1)—1(b)(11).

■ The relevant facts are undisputed. Under the sale of assets agreement between Conoco and Vista, the chemical plant employees began accruing benefits on July 20, 1984 under the Vista Plan rather than the Conoco Plan. The one major calculation of the amount to be transferred was made as of July 20, 1984. Interest accrued on the Vista Plan funds still held in the Conoco Plan account as of July 20, 1984. Part (iii) of the subsection clearly acknowledges that as an accounting matter "spinoff" can precede the "actual transfer" of funds. As a matter of law, the Vista Plan came into existence on July 20, 1984.

The 29 U.S.C. § 1058 requirement is that the benefits available to the employees immediately after the transfer be the same as or better than immediately before the transfer, on a termination basis. There is no dispute as to the correctness of the actuarial calculations of the accrued liabilities or the adequacy of the transfer in that respect. Also it is proper to disregard the accrued liability for Vista employees who retired before the Vista Plan was tax qualified. It is of no consequence that these funds were not part of the actual transfer on October 1, 1985; their retirements are being paid under the auspices of the Conoco Plan. What is dispositive is that the accrued benefits on a termination basis were the same both immediately before and after the July 20, 1984 Closing. *See, Van Orman, supra,* 608 F.Supp. at 25. Since it is undisputed that they were, the sixth count also fails.

## IV. CONCLUSION

Although the plaintiffs understandably feel short-changed because, due to no fault

of the plaintiffs, their former co-employees have received valuable benefits and they have not, the fact remains that ERISA simply does not protect these kinds of expectations and the plaintiffs consequently do not have the proverbial leg to stand on. For the reasons outlined in this opinion, the court concludes that the Conoco defendants are entitled to summary judgment as a matter of law as reasonable minds can only conclude from the undisputed material facts that the Conoco defendants have not unlawfully discriminated against nor breached any fiduciary duty to the plaintiffs, nor have they violated ERISA provisions relative to exclusiveness of purpose, elimination of benefits, or adequacy of transfer. The Conoco defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.