Harold W. RANDELL, Elmo Priest, Joseph P. Lewis and all other Persons Similarly Situated

v.

NEW ORLEANS PUBLIC SERVICE, INC. and Transit Management of Southeast Louisiana, Inc.

Civ. A. No. 89–1600.

United States District Court, E.D. Louisiana.

March 16, 1990.

Constantine Marquer, Jr., New Orleans, La., for plaintiffs.

Howard Shapiro, New Orleans, La., for New Orleans, Public Service, Inc.

Charles Hollis, New Orleans, La., for Transit Management of Southeast Louisiana, Inc.

## ORDER and REASONS

LIVAUDAIS, District Judge.

The motion of defendants, Transit Management of Southeast Louisiana, Inc. (hereinafter "TMSEL") and New Orleans Public Service, Inc. (hereinafter "NOPSI") to dismiss or alternatively for summary judgment was taken under submission on a prior date.

### I. FACTS

Defendant, NOPSI, sold its transit properties to the Regional Transit Authority (hereinafter "RTA"). In connection with this sale, NOPSI, RTA, TMSEL and the City of New Orleans entered into a Employee and Retiree Pension and Welfare Benefit Agreement (hereinafter "Benefit Agreement"). NOPSI had maintained a retirement plan for all of its employees (hereinafter "the NOPSI plan"). Effective June 30, 1983, a separate benefit plan was created for "Transit Participants", the TMSEL Retirement Income Plan (hereinafter "TMSEL Plan"). Transit participants are defined as:

(i) each employee of NOPSI who was participating in the Pension Plan immediately prior to the Time of Transfer and who becomes an employee of TMSEL, RTA or any of its contractors within 60 days after the Time of Transfer;

(ii) each retiree and vested terminee under the Pension Plan who was an employee of NOPSI in the transit department or in a transit-related position immediately prior to retirement or other termination of employment with NOPSI; and

(iii) each beneficiary of such employee, retiree and vested terminee.

All of the assets and liabilities allocable to transit participants were transferred from the NOPSI plan to the TMSEL plan as soon as possible.

Effective on August 1, 1984, NOPSI's Board of Directors approved amendment to the NOPSI plan which was designed to allow NOPSI employees who retired prior to January 1, 1983, a cost of living increase. Plaintiffs have filed this suit to obtain this cost of living increase. Defendants allege that on August 1, 1984 the plaintiffs were no longer participants in the NOPSI plan instead they participated in the TMSEL plan.

■ Defendants allege that plaintiffs' claims under state law for payment of benefits, damages, and equitable relief are preempted. It is uncontested that the pension plan in question is regulated by the Employee Retirement Income Security Act (hereinafter "ERISA"). Plaintiffs' claims are regulated under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). ERISA preempts any state laws as they relate to an employee benefit plan. Section 514(a) of ERISA, 29 U.S.C. § 1144(a). Defendant, NOPSI, cites *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) which held that "a suit by a beneficiary to recover benefits from a covered plan ... falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes." *Id.* 107 S.Ct. at 1546.

Accordingly, plaintiffs' state contract and tort claim are preempted.

■ Defendants further allege plaintiffs are ineligible for benefits under the NOPSI plan because on August 1, 1984 when the cost of living benefits were implemented by the NOPSI Board, the plaintiffs were already participants of the TMSEL plan, not the NOPSI plan.

ERISA defines a "participant" as:

"any employee or former employee ... who is or may be eligible to receive a benefit of any type from an employee benefit plan which cover employees of such employer"

Section 3(7) of ERISA, 29 U.S.C. § 1002(7).

Defendant, NOPSI, cites *Firestone Tire & Rubber Co. v. Bruch*, —— U.S. ——, 109

S.Ct. 948, 957, 103 L.Ed.2d 80 (1989) which construed the ERISA definition as:

> In our view, the term participant is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," *Saladino v. I.L. G.W.U. National Retirement Fund*, 754 F.2d 473, 476 (2nd Cir.1985), or former employees who have ... a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits, *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir) (per curiam), cert. denied, 479 U.S. 916[, 107 S.Ct. 318, 93 L.Ed.2d 291] (1986). In order to establish that he may become eligible for benefits, a claimant must have a colorable claim that (1) he will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits may become eligible. A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] may become eligible. *Saladino v. I.L.G.W.U. National Retirement Fund*, 754 F.2d at 476; *Burch*, 109 S.Ct. at 957–958.

The United States Court of Appeals for the Fifth Circuit held in *Joseph v. The New Orleans Elec. Pension & Retirement Plan*, 754 F.2d 628, 630 (5th Cir.1985) that "under ERISA, a 'participant' ... is any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan."

Plaintiffs were not participants under the NOPSI plan on August 1, 1984 when NOPSI plan participants became eligible for benefit. The spinoff of the TMSEL Transit plan from the NOPSI plan had occurred on June 30, 1983.

In *Bass v. Retirement Plan of Conoco, Inc.*, 676 F.Supp. 735 (W.D.La.1988), the Court held that with respect to the timing of the "transfer" of assets:

> The actual date of a merger or spinoff shall be determined on the basis of the facts and circumstances of the particular situation. For the purposes of this determination, the following factors, none of which is controlling, are relevant:
>
> (i) The date on which the affected employees stop accruing benefits under one plan and begin coverage and benefit accruals on another plan.
>
> (ii) The date on which the amount of assets to be eventually transferred is calculated.
>
> (iii) If the merger or spinoff agreement provides that interest is to accrue from a certain date to the date of actual transfer, the date from which such interest will accrue. Treas.Reg. § 1.414(1)–1(b)(11).

Under each of these factors, set forth in the Treasury Regulations, the transfer of assets occurred on June 30, 1983.

First, under the Benefit Agreement transit participants stopped accruing benefits under the NOPSI plan and began accruing benefits under the TMSEL plan on June 30, 1983. (Benefit Agreement, Article III p. 8–12, Record Document No. 3).

Second, the Benefit Agreement provided the amount of assets to be transferred from the NOPSI plan to the TMSEL plan were to be calculated as of the time of transfer on June 30, 1983. (Benefit Agreement, Article III p. 10, Record Document No. 3).

Third, interest began to accrue on the transferred assets on June 30, 1983 until the actual transfer date. (Benefit Agreement, Article III p. 12, Record Document No. 3).

Plaintiffs argue that because the funds were not actually transferred until October, 1986, when approval was granted by the Internal Revenue Service, the plaintiffs are entitled to the increase in benefits. Plaintiffs cite no jurisprudence in support of this proposition. In fact, the Court in *Bass, supra* considered the issue and stated that Part (iii) of the Treasury Regulations "clearly acknowledge that as an accounting matter 'spinoff' can precede the

'actual transfer' of funds." *Bass*, 676 F.Supp. at 748.

The plaintiffs have classified themselves as transit retirees (Paragraphs V and VII of the Complaint). Thus, plaintiffs admit that they were not employees of NOPSI when the pay increase was granted. Accordingly, plaintiffs may be 'participants' under the Supreme Court's definition of the word if they have an expectation of returning to covered employment or a colorable claim to a vested benefit.

On August 1, 1984, plaintiffs were participants in the TMSEL plan. They were transit retirees so they had no expectation of returning to work. They did not have a colorable claim to the vested benefits under the NOPSI plan because they were not under the NOPSI plan.

Accordingly, judgment will be entered against the plaintiffs, Harold W. Randell, Elmo Priest, Joseph P. Lewis and all other persons similarly situated and in favor of defendants, New Orleans Public Service, Inc. and Transit Management of Southeast Louisiana, Inc., each party to bear its own costs.